MATHEWS, KLUCK, WALSH & WYKLE, LLP

ATTORNEYS AT LAW
100 M STREET
EUREKA, CALIFORNIA 95501
TELEPHONE:    (707) 442-3758
FACSIMILE:    (707) 442-0813

ANCIS B. MATHEWS (1923-2000)
JRENCE A. KLUCK
_LY M. WALSH
IOTHY J. WYKLE

LEGAL ASSISTANTS:
LINDA SHAW
SUSAN MAY

October 28, 2009

Sigurd Anderson
PO Box 1610
Redway, CA  95560

   Re: Sigurd Anderson and Susan F. Barland

Dear Sigurd:

   Enclosed please find an updated draft Marital Agreement with Exhibits, based upon the information I have to date.  Please review the Marital Agreement to be sure it conforms with your proposed agreement with Susan.  As shown on the Exhibits, they are incomplete, since I need additional information regarding specific items which will remain separate property.  Also, please carefully review the Assessor's Parcel Numbers for the parcels of real property listed in the Exhibits to be sure they conform to what is going to be deemed as each party's separate property.

   As indicated in Paragraph D and Paragraph 5 of the Marital Agreement, each of you must make a full and complete financial disclosure to the other of all assets, debts, income and expenses.  To facilitate that exchange of information, I have enclosed two blank schedules of Assets and Debts and two blank Income and Expense Declarations for you and Susan to fill out.  The forms are used in divorce cases, but will also suffice in the context of disclosures required for your Marital Agreement.  You and Susan each need to complete a Schedule of Assets and Debts and an Income and Expense Declaration, being as accurate and complete as possible.  Failure to make complete disclosures can result in the Marital Agreement being set aside.  On the Schedule of Assets and Debts, it is necessary to disclose both separate and community property assets, and denote whether such asset is a separate property asset or a community property asset.

   After completion, the Schedules of Assets and Debts and Income and Expense Declarations should be provided to me so that I can prepare a disclosure for each of you to review with your respective attorneys and then exchange to comply with the requirement of full and complete disclosure prior to entering into a Marital Agreement.

ORD-0004157

If you have any questions regarding the foregoing, please do not hesitate to contact me.

Sincerely Yours,

Mathews, Kluck, Walsh & Wykle, LLP

Kelly M. Walsh

KMW/pj
Enclosures

ORD-0004158

## MARITAL AGREEMENT

THIS AGREEMENT is made and entered into on June 3, 2010, at Eureka, California, by and between SIGURD T. ANDERSON ("SIGURD"), of Humboldt County, California, and SUSAN F. BARLAND ("SUSAN"), of Humboldt County, California, with reference to the following:

A.     SIGURD and SUSAN are husband and wife, having been lawfully married on September 23, 2006, in the State of California.

B.     Since the date of their marriage, SIGURD and SUSAN have lived together continuously as husband and wife at 46 Cedar Lane, Redway, Humboldt County, California.

C.     The parties do not presently contemplate a separation and have no intention of obtaining a dissolution of marriage.

D.     SIGURD and SUSAN each desire to make to one another a fair disclosure of material facts and information regarding the existence, characterization and valuation of property, community, separate or otherwise, and interests in property owned by the parties or either of them, and of the financial obligations of the parties or either of them.

E.     The parties intend and desire by this Agreement to define their respective rights in the property owned separately, jointly or as community property by both or either of them, and to fix in writing their respective and collective rights in such property.

F.     Both parties hereto recognize that this Agreement is a marital agreement executed during marriage, and understand and intend that the provisions of this Agreement shall prevail over the provisions of law otherwise applicable in the absence of this Agreement.

1

ORD-0004159

Family Code §§721(b) and 1100(e). The parties acknowledge and agree that each has conscientiously endeavored to fulfill the duties and obligations imposed upon each of them by California statutory and case law with respect to this Agreement, and will continue to do so under its terms.

4.    **Voluntary and Informed Consent:** The parties further acknowledge and agree that they are fully aware of the contents, legal effect and consequences of this Agreement, and that they enter into this Agreement voluntarily, free from duress, fraud, undue influence, coercion or misrepresentation of any kind.

5.    **Property and Financial Disclosures:**

a.    A fair disclosure of all material facts and information regarding the existence, characterization and valuation of property, community separate or otherwise, in which SIGURD has an interest in whole or in part, and of SIGURD's financial obligations has been made by him to SUSAN. It is understood that the figures and amounts of property and financial obligations in said disclosure are approximate and not necessarily exact, but they are intended to be reasonably accurate and are warranted to be the bests estimates of such figures and amounts. SUSAN hereby acknowledges and agrees that she has been provided with sufficient information, records, books and data and afforded reasonable time and opportunity to properly investigate and analyze SIGURD's disclosures.

b.    A fair disclosure of all material facts and information regarding the existence, characterization and valuation of property, community separate or otherwise, in which SUSAN has an interest in whole or in part, and of SUSAN's financial obligations has been made by her to SIGURD. It is understood that the figures and

3

ORD-0004160

amounts of property and financial obligations in said disclosure are approximate and not necessarily exact, but they are intended to be reasonably accurate and are warranted to be the bests estimates of such figures and amounts. SIGURD hereby acknowledges and agrees that he has been provided with sufficient information, records, books and data and afforded reasonable time and opportunity to properly investigate and analyze SUSAN's disclosures.

6. **Rights Incident to Parties' Prior Nonmarital Relationship:** SIGURD and SUSAN acknowledge and agree that they have not previously entered into any other contract, understanding, or agreement whether express, implied in fact or implied in law, with respect to each other's property or earnings, wherever or however acquired. The parties acknowledge that they cohabited together in a nonmarital relationship in the State of California prior to their marriage. The parties acknowledge that prior to executing this Agreement they each have been advised to consult with independent legal counsel regarding California law on nonmarital relationships. The parties agree that neither party now has, possesses or claims any right or interest whatsoever, in law or equity, under the laws of any state, in the present or future property, income or estate of the other, or a right to reimbursement or any other payments of any kind from the other arising by reason of their nonmarital relationship. The parties further agree that no jointly owned property was acquired during their nonmarital relationship.

7. **Separate Property Interests in Existing and After-Acquired Property:**

a. SIGURD and SUSAN agree that all property acquired by SIGURD before marriage, including but not limited to the property set forth in **Exhibit A** and any

4

ORD-0004161

property hereafter acquired by SIGURD during the marriage by gift, bequest, devise, or descent shall be and remain his separate property. The parties further acknowledge and agree that all rents, issues, profits, increases, appreciation and income from SIGURD's separate property, and any other assets purchased or otherwise acquired with the foregoing proceeds, shall be and remains SIGURD's separate property, and any assets purchased or acquired with the foregoing proceeds shall be and remain SIGURD's separate property, regardless of the source of loan repayment or the intent of the lender. The parties agree that a change in the form of SIGURD's separate property assets as a result of the sale, exchange, encumbrance, hypothecation or other disposition of such assets shall not constitute any change of property characterization and such assets shall remain SIGURD's separate property regardless of any change in form. SUSAN shall have no right, title, interest, lien or claim under the laws of any state in or to any of SIGURD's separate property assets regardless of the date any asset is acquired.

b.    SIGURD and SUSAN agree that all property acquired by SUSAN before marriage, including but not limited to the property set forth in **Exhibit B** and any property acquired by SUSAN during the marriage by gift, bequest, devise or descent shall be and remain her separate property. The parties further acknowledge and agree that all rents, issues, profits, increases, appreciation and income from SUSAN's separate property, and any other assets purchased or otherwise acquired with the foregoing proceeds, shall be and remain SUSAN's separate property. The parties agree that the proceeds of loans obtained by SUSAN to purchase property toward which she has made a down payment with separate property, the proceeds of loans secured by SUSAN's separate property and any assets purchased or acquired with the foregoing proceeds shall

5

ORD-0004162

be and remain SUSAN's separate property, regardless of the source of loan repayment or the intent of the lender. The parties agree that a change in the form of SUSAN's separate property assets as a result of the sale, exchange, encumbrance, hypothecation or other disposition of such assets, or a change in the form of doing business, shall not constitute a change of property characterization and such assets shall remain SUSAN's separate property regardless of any change in form. SIGURD shall have no right, title, interest, lien or claim under the laws of any state in or to any of SUSAN's separate property assets regardless of the date any asset is acquired..

**8.     Marital Efforts In Managing Each Party's Own Separate Property Interests.**

a.     The parties acknowledge and agree that SIGURD may have, and continue to, devote considerable personal time, skill, service, industry and effort to the investment and management of his separate property and the income thereof. The parties acknowledge and agree that even though the expenditure of SIGURD's personal time, skill, service, industry and effort might constitute or create a community property interest, community property income or community property asset in the absence of this Agreement, no such community property interest, income or asset has been or shall be created thereby, and any income profits, accumulations, appreciation and increase in value of the separate property of SIGURD is and shall be and remain entirely SIGURD's separate property.

b.     The parties acknowledge and agree that SUSAN may have, and continue to, devote considerable personal time, skill, service, industry and effort to the investment and management of her separate property and the income thereof. The parties

6

ORD-0004163

acknowledge and agree that even though the expenditure of SUSAN's personal time, skill, service, industry and effort might constitute or create a community property interest, community property income or community property asset in the absence of this Agreement, no such community property interest, income or asset has been or shall be created thereby, and any income, profits, accumulations, appreciation and increase in value of the separate property of SUSAN during the parties' marriage is and shall be and remain entirely SUSAN's separate property.

c.      To the extent that, prior to the execution of this agreement, any community property interest or right of reimbursement or credit has been created as a result of the use of community funds, property, skills or efforts to acquire, pay down, pay off, improve or enhance the value of any separate property of either SIGURD or SUSAN, the other party hereby disclaims any such community property interest or right of reimbursement or credit.  To the extent required under California Family Code Section 852, the disclaimer or waiver contained in this paragraph constitutes an express declaration of transmutation of any accumulated community property interest or right of reimbursement or credit.

**9.      Marital Efforts in Managing the Other Party's Separate Property Interests:**      The parties acknowledge and agree that during their marriage, one party may choose to contribute considerable personal time, skill, service, industry and effort to the investment and management of the other party's separate property and the income thereof.  The parties acknowledge and agree that even though any such contribution might constitute or create a community property interest, community property income or a community property asset in the absence of this Agreement, no such community

ORD-0004164

property interest, income or asset shall be created thereby.  The parties further agree that any such contribution shall not create any other claim, right, lien or interest whatsoever in favor of the party contributing the personal time, skill, service, industry and effort, in or to the other party's separate property and any income, profits, accumulations, appreciation and increase in value thereof during the parties' marriage.

10.    **Waiver of Rights in Respective Estates:**    SIGURD and SUSAN agree that each party waives and relinquishes, to the fullest extent lawfully possible, all right, title, claim, lien or interest, whether actual, inchoate, vested or contingent, in law and equity, under the laws of any state or under Federal law, in the other's separate property, separate property income and separate property estate by reason of the marriage, including, without limitation, the following:

(a)    All community property, quasi-community property, and quasi-marital property rights;

(b)    The right to a probate family allowance;

(c)    The right to a probate homestead;

(d)    The rights or claims of dower, curtsey, or any statutory substitute now or hereafter provided under the laws of any state in which the parties may die domiciled or in which they may own real property;

(e)    The right to inherit separate property from the other by intestate succession;

(f)    The right to receive separate property that would pass from the decedent party by testamentary disposition in a will executed before this Agreement;

(g)    The right of election to take against the will of the other;

8

ORD-0004165

(h)     The right to take the statutory share of an omitted spouse;

(i)     The right to be appointed as administrator of the deceased party's estate, or as executor of the deceased party's will, unless appointed pursuant to a will executed after the date hereof;

(j)     The right to have exempt property set aside;

(k)     Any right created under Federal law, including, without limitation, the Retirement Equity Act of 1984; and

(l)     Any right, title, claim or interest in or to the separate property, separate property income or separate property estate of the other by reason of the parties' marriage.

11.     **Property Transfers Between Parties:** Notwithstanding any provision in this Agreement, and in particular the provisions of paragraph 10, the parties agree that nothing contained in this Agreement shall be construed as a bar to either party's transferring, conveying, devising or bequeathing any of his or her or separate property or community property to the other. Neither party intends by this Agreement to limit or restrict in any way the right to receive any such transfer, conveyance, devise or bequest from the other made during the parties' marriage. However, the parties specifically agree that no promises of any kind have been made by either of them about any such gift, bequest, devise, conveyance or transfer from one to the other.

12.     **Management and Control of Separate Property Interest; Executing Arrangements:** The parties agree that each party shall retain and enjoy sole and exclusive management and control of his or her separate property, both during lifetime and upon death, as though unmarried. In order to accomplish the intent of this

9

ORD-0004166

Agreement, each of the parties agrees to execute, acknowledge and deliver, at the request of the other, his or her heirs, executors, administrators, grantees, devisees or assigns, any and all such deeds, releases, assignments or other instruments including, but not limited to, the retirement plan waiver and consent forms referred to in paragraph 13 of this Agreement, and such further assurances as may be reasonably required or requested to effect or evidence the release, waiver, relinquishment or extinguishment of the rights of the said party in the property, income or estate of the other under the provisions of this Agreement, and to assure that each party shall have sole and exclusive management and control of his or her separate property.

**13.    Separate Property Interest in Retirement Account:**    SIGURD presently owns a substantial beneficial interest in an Individual Retirement Account (IRA) in his name.  SUSAN acknowledges and agrees that pursuant to the terms of this Agreement, the IRA account currently held for the benefit of SIGURD listed in **Exhibit A** attached to this Agreement and incorporated herein by reference is his separate property, together with any and all income, interest, appreciation and increase of such funds, even to the extent contributions to the IRA are made during marriage.  To the extent that, prior to the execution of this agreement, any community property interest or right of reimbursement or credit has been created as a result of the use of community funds, property, skills or efforts to contribute to SIGURD's IRA, SUSAN hereby disclaims any such community property interest or right of reimbursement or credit.  To the extent required under California Family Code Section 852, the disclaimer or waiver or an interest contained in this paragraph constitutes an express declaration of transmutation of any accumulated community property interest or right of reimbursement

10

ORD-0004167

or credit in SIGURD's IRA, now or in the future, including future contributions to the IRA from either community or separate property sources.

14.     **Separate Property Earnings:**  The parties acknowledge and agree that except as otherwise expressly provided in this Agreement, any earnings income or benefits, no matter their nature, kind or source, from and after the date of their marriage, including but not limited to salary, bonuses, stock options, deferred compensation, and retirement benefits, shall be the separate property of the party earning or acquiring such earnings, income or benefits as though no marriage existed between them.  There shall be no allocation made of any such earnings, income or benefits between community property and separate property, and such earnings, income or benefits shall be entirely the separate property of the party earning or acquiring the same.

The parties acknowledge their understanding that in the absence of this Agreement, any earnings, income or benefits resulting from the personal services, skills, industry and efforts of either party during the marriage would be community property.

**Confirmation of Community Property Interests:**  The parties agree that all property set forth in **Exhibit C** attached to this Agreement and incorporated by reference herein is and shall remain their community property.  All rents, issues, profits, increases, appreciation and income from the parties' community property, and any other assets purchased with such community property income, funds or proceeds shall be and remain community property.  The parties agree that a change in the form of community property assets as a result of the sale, exchange, hypothecation or other disposition of such assets, or a change in the form of doing business, shall not constitute a change of property

11

ORD-0004168

characterization and such assets shall remain the parties' community property regardless of any change in form.

15.    **Debt Obligations on Separate Property Interests: Community Reimbursement:**    All obligations (including principal and interest) incurred because of, or as a consequence of, the purchase, encumbrance or hypothecation of the separate property of either party, whether real, personal or mixed, and all taxes, insurance premiums and maintenance costs of said separate property, shall be paid from such party's separate property income or from such party's separate property funds, at such party's election.  If there is inadequate separate property income or separate property funds to pay all of the foregoing obligations, the balance may be paid from community property income or community property funds.  In the event that community property income or community property funds are so used, the community shall acquire no interest in such party's separate property, but the community shall be entitled to dollar-for-dollar reimbursement of the community income or funds so used without interest or adjustment for changes in monetary values.  Such reimbursement right shall be applicable only in the event of dissolution of the parties' marriage.

16.    **Community Obligations and Living Expenses:**    Community obligations and joint living expenses shall be paid from community income or from community property funds.  If there is inadequate community income or community property funds to pay all community obligations and joint living expenses, the balance may be paid from the separate income or separate property funds of either spouse, and the paying spouse shall not be entitled to a right of reimbursement to the extent that separate property income or funds are so used.  The term "joint living expenses," as used in this

12

ORD-0004169

paragraph, includes, but is not limited to: food; household supplies; utilities; telephone; laundry; cleaning; clothing; medical and dental expenses; medical, life, accident and auto insurance; gasoline, oil, and auto repairs; automobile purchase and/or lease payments; entertainment; support of any minor children that are the issue of the marriage; and joint gifts to third persons.

17. **Tax Returns:** The parties may elect to file joint rather than separate Federal and State income tax returns for any years which they so desire. The election, if any, to file joint Federal and State income tax returns shall not create any transmutation, or community property or any other rights or interests in contravention of this Agreement. The parties shall pay the entire tax due on each joint Federal and State return filed under this Agreement, with the amount of each party's pro rata share of the joint return income tax liability determined as follows:

a. SIGURD shall pay the amount of tax attributable to income or gains, and be entitled to deduction and credits for losses attributable to his separate property determined as follows:

(i) A first hypothetical amount of income taxes shall be determined on the income, gains, losses, deduction and credits attributable to SIGURD's separate property and one-half of the community property earnings and income of SIGURD and SUSAN (referred to in paragraph 14) based upon rates and exemptions of a return for a married taxpayer filing separately, and taking into account one-half of all community property losses, deductions and credits available.

(ii) A second hypothetical amount of income taxes shall be determined on one-half of the community property earnings and income of SIGURD and

13

ORD-0004170

SUSAN (referred to in paragraph 14) based upon rates and exemptions of a return for a marriage taxpayer filing separately, and taking into account one-half of all community property losses, deductions and credits available.

(iii)    The difference between the two hypothetical amounts of income taxes shall be the amount of income taxes attributable to the income, gains, losses, deductions and credits from SIGURD's separate property, which SIGURD shall pay with his separate property funds, and from which he shall indemnify and hold SUSAN free and harmless.

b.    A similar calculation shall be made for SUSAN, taking account her separate property income, gains, losses, deductions and credits, and she shall pay the income taxes attributable to such separate property income.  SUSAN shall indemnify and hold SIGURD free and harmless from any liability on income taxes attributable to her separate property income.

c.    The balance of the tax due on the joint income tax return shall be paid by the parties will community property funds.  In any year in which the parties do not file joint Federal and State income tax returns, each party shall be solely responsible for all income taxes attributable to his or her income, gains, losses, deductions and credits from his or her respective separate property, and for one-half of the income taxes attributable to community property earnings and income (referred to in paragraph 14), taking into account one-half of all community property losses, deductions and credits available.

14

ORD-0004171

d.      Any refund arising out of a joint Federal or State income tax return shall be apportioned between the parties in the same proportions as their respective contributions to tax payments are allocated in this paragraph 18.

18.      **Support Liability:**    Nothing contained in this Agreement shall be construed as absolving either party of the statutory obligation to support the other during marriage or to affect in any way the obligation to support any children of the contemplated marriage. The parties are not presently separated and have no contemplation of separating or pursuing dissolution of their marriage. However, in the event of a separation or marital dissolution, either party's obligation to support the other shall be determined under and governed by the laws of the State of California.

19.      **Parties and Persons Bound:** This Agreement shall bind the parties to the Agreement and their respective heirs, executors, administrators, representatives, assigns and any other successors in interest.

20.      **Execution Formalities:** The parties specifically agree that forthwith upon their execution of this Agreement, their respective signatures shall be acknowledged by a notary public, in their presence. The parties further acknowledge that the date which is set forth on the first page of this Agreement is the actual date on which they and each of them are signing this Agreement. This Agreement or a memorandum of this Agreement may be recorded at any time and from time to time by either party in any place or office authorized by law for the recording of documents affecting title to or ownership status of property, real or personal, specifically including, but not limited to, any county in which either party resides during the marriage, and any county in which either party owns or may own real or personal property.

ORD-0004172

21.    **Applicable Law:**    This Agreement is executed in the State of California and shall be subject to and interpreted under the laws of the State of California.

22.    **Entire Agreement:**    This Agreement contains the entire understanding and agreement of the parties, and there have been no promises, representations, warranties or undertakings by either party to the other, oral or written, of any character or nature, except as set forth herein.

23.    **Modification Revocation:**    This Agreement may be altered, amended, modified or revoked only by an instrument in writing expressly referring to this Agreement, executed, signed and acknowledged by the parties hereto, and by no other means.  Each of the parties waives the right to claim, contend or assert in the future that this Agreement was modified, cancelled, superseded, or changed by an oral agreement, course of conduct or estoppel.

24.    **Invalidity; Severability:**    This Agreement has been jointly prepared and negotiated by counsel for each of the parties and shall not be construed against either party.  If any terms, provision or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

IN WITNESS WHEREOF, the parties have executed this Marital Agreement on the date set forth above on the first page of this Agreement.

Sigurd Anderson

Susan Barland

16

ORD-0004173

STATE OF CALIFORNIA

ss.

COUNTY OF HUMBOLDT

On ___June 3_____, 2010, before me, ___Susan R. May___, notary public, personally appeared SIGURD ANDERSON who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



_____
Susan R. May, Notary Public

SUSAN R. MAY
COMM. #1772934
NOTARY PUBLIC • CALIFORNIA
HUMBOLDT COUNTY
My Comm. Expires Nov. 5, 2011

STATE OF CALIFORNIA

ss.

COUNTY OF HUMBOLDT

On ___June 3_____, 2010, before me, ___Susan R. May___, notary public, personally appeared SUSAN BARLAND who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____, Notary Public

SUSAN R. MAY
COMM. #1772934
NOTARY PUBLIC • CALIFORNIA
HUMBOLDT COUNTY
My Comm. Expires Nov. 5, 2011

17

## EXHIBIT A
## TO MARITAL AGREEMENT

### (Sigurd's Separate Property)

1.  Real property and any improvements located thereon located in the unincorporated area of Humboldt County, California, commonly known as Assessor's Parcel Numbers 212-015-030 and 212-016-011 (Seely Creek/Rose Lake). Estimated value is $360,000, estimated debt is $50,000.

2.  An undivided 1/3rd interest in real property and any improvements located thereon located in the unincorporated area of Humboldt County, California, commonly known as Assessor's Parcel Number 221-230-010 (Elk Ridge)

3.  Individual retirement account in the name of Sigurd Anderson, at Putnam Investments, Account No. ████1437, and Account No. ████ ████5570.

4.  The life insurance policy, including any cash surrender value and the right to assign any benefit payable upon death, evidenced by Policy No. ████7875, with the Hartford Life and Annuity Insurance Company (cash surrender value approximately $44,425)

5.  Any and all deposit accounts in the name of Sigurd Anderson only, including:

    Community Credit Union of Southern Humboldt account No. 1647

6.  Original Peter Holbrook Painting.

7.  Year model 2000 Toyota Tundra pickup truck.

## EXHIBIT B
## TO MARITAL AGREEMENT

### (Susan's Separate Property)

1.    Real property and any improvements thereon commonly known as Humboldt County, California, Assessor's Parcel Numbers 212-015-025 and 212-015-032 (Seely Creek rentals).  Estimated value is $250,000.

3.    All property and any improvements thereon commonly known as Nevada County, California, Assessor's Parcel Number 46-340-13 (Wolfgang Road, Truckee, California).  Estimated value is $450,000; estimated debt is $169,000.

4.    Any and all deposit accounts in the name of Susan Barland only, including the following:

(a).  North Valley Bank, Checking Account Number ███████1041

(b).  Chase Bank, Account Nos. ██████1893, ██████627, and ██████9002

5.    BMW purchased in 2008;

ORD-0004176

**EXHIBIT C**
**TO MARITAL AGREEMENT**

**(Community Property)**

1.    Chevrolet Truck Purchased in 2008.

2.    Toyota Tacoma Truck Purchased in 2006.

3.    Toyota 4Runner Purchased in 2003.

4.    ATV purchased in 2003

5.    Real property and any improvements located thereon located at 46 Cedar Lane, Redway, Humboldt County, California, commonly known as Assessor's Parcel Number 077-141-002.

6.    The parties joint account at Umpqua Bank.

7.    Household furniture and furnishings purchased during marriage (personal effects purchased during marriage, as well as personal property received as a gift or devise, shall be considered the separate property of the spouse for whom the personal effect was acquired or to whom the gift or devise was made).

ORD-0004177